UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES P. BEAM,

               Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

               Defendant.

Case No. 3:11-cv-05196-RJB-KLS

REPORT AND RECOMMENDATION

Noted for January 6, 2012

     Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

     On June 2, 2006, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 2000, due to post traumatic stress disorder ("PTSD"), depression, a dissociative disorder, alcohol dependence, and back problems. See Administrative Record ("AR") 15, 117, 147. His application was denied upon initial administrative review and on reconsideration. See

REPORT AND RECOMMENDATION - 1

AR 15, 91, 96. A hearing was held before an administrative law judge ("ALJ") on March 17, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 27-86.

On September 2, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 15-24. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 20, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 416.1481. On March 14, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on June 29, 2011. See ECF #13-#14. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues that defendant's decision should be reversed and that this matter should be remanded for further administrative proceedings, because the ALJ erred: (1) in his treatment of plaintiff's alcohol and substance abuse; (2) in evaluating the medical evidence in the record; (3) in discounting plaintiff's credibility; and (4) in assessing her residual functional capacity. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision should be reversed and that this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

REPORT AND RECOMMENDATION - 2

F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Treatment of Plaintiff's Alcohol and Substance Abuse

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. However, a claimant may not be found disabled if alcoholism or drug addiction would be "a contributing factor material" to defendant's determination that he or she is disabled. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)); see also 20 C.F.R. § 416.935(a) (requiring determination of whether drug addiction or alcoholism is contributing factor material to determination of disability).

To determine whether a claimant's alcohol or drug abuse is a materially contributing factor to defendant's determination of disability, the ALJ first must conduct the five-step sequential disability evaluation process "without separating out the impact of alcoholism or drug addiction." Bustamante, 262 F.3d at 955. If the ALJ finds the claimant is not disabled, "then the claimant is not entitled to benefits." Id. If the claimant is found disabled, however, "and there is 'medical evidence of [his or her] drug addiction or alcoholism,'" the ALJ proceeds "to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'" Id. (citing 20 C.F.R. § 416.935).

REPORT AND RECOMMENDATION - 3

Accordingly, if a claimant's current limitations "would remain once he [or she] stopped using drugs and alcohol," and those limitations are disabling, "then drug addiction or alcoholism is not material to the disability, and the claimant will be deemed disabled." Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001). Plaintiff argues the ALJ did not properly conduct the above two-step analysis. Specifically, plaintiff asserts the ALJ erred in not first determining whether he was disabled without separating out the impact of his drug and alcohol abuse. The undersigned agrees. Although the ALJ provided a thorough summary of the medical evidence in the record, including evidence of plaintiff's alcohol and substance abuse (see AR 20-23), she made findings indicating she was first separating out such abuse.

As noted by the ALJ herself, the record reveals plaintiff had "a significant history of drug and alcohol abuse which appears to have exacerbated his symptoms and limitations." AR 21; see also AR 22 (noting one medical source found "depression was worsened by use of alcohol and drugs," and another such source referred to "'current poor psychosocial functioning' which could mean . . . use of drugs and alcohol"); AR 23 (further noting that one of plaintiff's counselors had found he had "severe dependence on alcohol," that he reported to that counselor having suffered "consequences at work as a result of using alcohol or drugs" and that one physician commented that alcohol was his "pitfall"). The ALJ then concluded that if plaintiff "has been unable to work at times, it is because of his addiction to alcohol and drugs." AR 23.

But this is precisely the determination the ALJ is required to make prior to then going on to determine whether alcohol and drug abuse are material factors in the claimant's disability. It appears, though, that as indicated above the ALJ did not do this. Rather, she clearly factored out evidence of plaintiff's alcohol and drug abuse in determining that his other impairments were not disabling. See AR 20-23. Defendant is correct that if the ALJ does find the claimant to be not

REPORT AND RECOMMENDATION - 4

disabled, the actual materiality determination is not triggered. As noted above, however, the ALJ still must first determine whether plaintiff is disabled considering *all* of his impairments and their impact on his functioning, including the alcohol and sustance abuse.

In addition, as discussed above, there is strong evidence that such abuse has significantly impacted plaintiff's mental functioning. Thus, while it may be that the ALJ ultimately will be shown to be correct in finding plaintiff's *other* impairments are not disabling absent the impact of his alcohol and substance abuse, it is not at all clear that his alcohol and substance abuse is not disabling, and therefore immaterial. But it is just this determination that is required to be made at the outset no matter the ultimate determination on this issue, which the ALJ failed to do. Such failure constitutes legal error on the ALJ's part.

II. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

REPORT AND RECOMMENDATION - 5

stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

REPORT AND RECOMMENDATION - 6

A. <u>Dr. Beavers</u>

Plaintiff challenges the ALJ's following findings:

> Limited weight was . . . given to the opinion of Daniel Beavers D.O. Dr. Beavers opined that the claimant would miss more than two days a month from work due to poor psychosocial functioning. (Exhibit 20F/4). Dr. Beavers failed to provide an explanation of the evidence he relied on in forming the basis of his opinion. He referred to "current poor psychosocial functioning" which could mean [the] claimant's use of drugs and alcohol or a lack of motivation. The doctor referred to "serious social withdrawal" as a basis for his view that [the] claimant would have marked problems with social functioning. However, he did not seem aware that [the] claimant has done odd jobs with friends, helped a friend move and uses public transportation nearly daily. The doctor's reference to [the] claimant avoiding public situations (Exhibit 20F/2) is not consistent with [the] claimant's testimony that he shops, he went to church when he was in jail and he often uses public transportation. The doctor's opinion is not objective regarding many of the factors he described. This may be because he had had limited contact with [the] claimant at the time he responded to questions in the statement; he said he had seen [the] claimant 3 times since March 2008 (Exhibit 5F/1). It also may be because he was relying largely on [the] claimant's subjective statements in filling out the form. However, his view that [the] claimant had no problems with concentration, persistence and pace (Exhibit 5F/3) appears to be objective, and this has been given weight in determining [the] claimant's residual functional capacity. His indication that [the] claimant would miss more than 2 days a month from a simple job appears to be speculative and not consistent with the record as a whole. I do not give weight to that view. It, and much of the questionnaire, is conclusory and unpersuasive.

AR 22-23. As noted above, an ALJ need not accept even a treating physician's opinion if it "is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson</u>, 359 F.3d at 1195; <u>Thomas</u>, 278 F.3d at 957; <u>Tonapetyan</u>, 242 F.3d at 1149.

The undersigned agrees with the ALJ that little in the way of objective clinical findings were provided by Dr. Beavers in support of his opinion. <u>See</u> AR 415-18. Plaintiff argues that Dr. Beavers was part of his treatment team, that while he may only have seen plaintiff three times he was aware of his interactions with other members of the treatment team and that the opinion Dr. Beavers provided should have been evaluated in this context. But plaintiff does not point to any

REPORT AND RECOMMENDATION - 7

actual evidence in the record that Dr. Beavers was aware of the particular findings or opinions of other members of his treatment team.

Even if Dr. Beavers was so aware, furthermore, he still failed to make any citation or reference to those members' findings in the questionnaire he completed that would give at least some objective support for his opinion. Nor has plaintiff. Thus, while the undersigned agrees with plaintiff that the evidence in the record concerning the specific activities noted by the ALJ do not necessarily show they were performed at a level or for a length of time that clearly calls into question the opinion of Dr. Beavers (see AR 155-60, 163-67, 201-05, 247, 295), the ALJ as discussed above still provided a specific and legitimate reason for rejecting it.

B. Dr. Richardson

The ALJ also found in relevant part as follows:

> Some weight was given to the opinion of Betty Richardson[,] Ph.D.[,] who opined that the claimant would be able to maintain employment and function adequately with intervention. (Exhibit 5F/4). She noted that his depression was worsened by use of alcohol and drugs and it appears her reference to intervention had to do with treatment for his alcohol and cannabis dependence (both in her list of diagnoses) and for his other psychological disorders. The doctor was vague about that, however, and she saw [the] claimant only once for purposes of determining his eligibility for general assistance, apparently. Thus, she and the other doctors who saw him for that purpose had only limited knowledge of his condition and his limitations.

AR 22. Plaintiff argues these are not legitimate reasons for rejecting Dr. Richardson's opinion. Again, the undersigned agrees. As noted by plaintiff, the fact that a medical source has seen a claimant once is not in itself a valid reason for discounting that source's opinion. Indeed, this is the very definition of an examining medical source – i.e., a source that has seen and evaluated a claimant once or, perhaps, at most two or three times – and, indeed, defendant has often relied on the opinions of such one-time examiners in making his non-disability determinations. Thus, it is not inappropriate for plaintiff to rely on such sources as well.

REPORT AND RECOMMENDATION - 8

Nor is the ALJ's reference to Dr. Richardson being vague about intervention a legitimate basis for rejecting her opinion. First, it is not at all clear how any issue of vagueness concerning treatment here reflects on the credibility of Dr. Richardson's findings regarding plaintiff's ability to function. Second, to the extent the ALJ felt this portion of Dr. Richardson's evaluation made her opinion overall vague or ambiguous, she had a responsibility to further develop the record by re-contacting Dr. Richardson. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (duty to further develop record triggered when there is ambiguous evidence or record is inadequate to allow for proper evaluation of evidence); 20 C.F.R. § 416.912(e)(1) (stating that when evidence from medical source is inadequate to determine whether claimant is disabled, that source will be re-contacted to seek additional evidence or clarification, when that source's report "contains a conflict or ambiguity that must be resolved" or "does not contain all the necessary information). It does not appear the ALJ did this here.

C. Dr. Parker and Mr. Sanchez

Plaintiff challenges as well the ALJ's statement that she was giving "[l]imited weight . . . to the assessments by Robert E. Parker, Ph.D., [and] M. Sanchez, MPHMNP[,] who noted that [plaintiff] had marked cognitive and social factors," because those assessments were "conclusory with neither source providing an explanation of the evidence they relied on in forming the basis of their assessment[s]." AR 22. The undersigned agrees the ALJ erred in rejecting Dr. Parker's assessment on this basis, given that Dr. Parker conducted a mental status examination, provided his own observations of plaintiff and performed psychological testing. See AR 235-38, 392-95; see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent psychiatric evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) (quoting Christensen v. Bowen, 633 F.Supp.

REPORT AND RECOMMENDATION - 9

1214, 1220-21 (N.D.Cal.1986)) ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology"); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for diagnostic impression of psychiatric disorder, just as physical examination results provide basis for diagnosis of physical illness or injury).

Mr. Sanchez, though, provided no similarly objective evidence to support the limitations he assessed, but rather merely seems to have relied on plaintiff's own self-reports. See AR 396-99. Because of this lack of objective support and because, as discussed below, the ALJ properly found plaintiff to be not fully credible, the ALJ did not err in rejecting the limitations assessed by Mr. Sanchez on this basis. See Tonapetyan, 242 F.3d at 1149 (medical opinion premised on claimant's complaints may be disregarded where record supports ALJ in discounting claimant's credibility); Morgan, 169 F.3d at 601 (9th Cir. 1999).

### D. Dr. Joseph

Next, plaintiff takes issue with the ALJ's following findings:

> Limited weight was also given to the opinion of Colin R. Joseph[,] Ph.D., who saw [the] claimant regarding eligibility for general assistance. Dr. Joseph opined that the claimant exhibited significant symptoms and would not be able to function adequately in the workplace. (Exhibit 19F/7). This assessment is inconsistent with the record as a whole and inconsistent with the evidence of [the] claimant's activities of daily living which include doing odd jobs with friends (Exhibit 6F/l); looking for work (testimony); housework; fishing; and using public transportation nearly daily (testimony). His activities are not limited to the extent one would expect given the claimant's allegations of disabling symptoms. (Exhibit 4E/l-4).

AR 22. As noted above, an ALJ need not accept the opinion of even a treating physician if it is "inadequately supported by clinical findings" or "by the record as a whole." Batson, 359 F.3d at 1195; see also Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. A physician's opinion also may be rejected on the basis that it is inconsistent with the claimant's reported activities of

REPORT AND RECOMMENDATION - 10

daily living. See Morgan, 169 F.3d 595, 601-02 (9th Cir. 1999). The undersigned agrees with plaintiff, however, that the ALJ was insufficiently specific when she stated Dr. Joseph's opinion was inconsistent with the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). In addition, as discussed above, the record fails to establish definitively that plaintiff has engaged in his daily activities at a level or to an extent that necessarily contradicts the medical evidence in the record indicating he suffers from mental functional limitations – including those found by Dr. Joseph – that are more severe than the ones the ALJ adopted.

### E. Dr. Gregg

Lastly, plaintiff argues the ALJ improperly relied on the mental functional assessment completed by Timothy A. Gregg, Ph.D., in early September 2006, and affirmed by Bruce Eather, Ph.D., in late November 2006, both of whom are non-examining psychologists. See AR 23, 327-29, 366. The ALJ erred in placing greater weight on the assessment of these sources than the opinions of the other medical sources discussed above, plaintiff asserts, because Drs. Gregg and Eather had very few records on which to base their assessment. The assessment completed by Dr. Gregg, however, is dated subsequent to the opinions provided by Dr. Parker, Dr. Richardson, Dr. Johnson, and Mr. Sanchez, and therefore presumably he had access to those reports at that time. As discussed above, furthermore, while Dr. Beavers filled out his questionnaire after Dr. Gregg completed his assessment, the ALJ did not err in rejecting that questionnaire on the basis of lack of objective support therefor.

As such, it appears the only opinion provided by the medical sources discussed above Dr. Gregg did not have access to, was that of Dr. Joseph. Plaintiff points to the notice of explanation of the Social Security Administration's initial administrative denial of his SSI application, which lists certain records apparently considered in making that denial (see AR 91-94), as evidence that

REPORT AND RECOMMENDATION - 11

the records Dr. Gregg and Dr. Eather reviewed were very limited in scope. However, there is no indication in that notice that these records were the only ones reviewed by the two psychologists. See id. Accordingly, the undersigned rejects plaintiff's argument. On the other hand, as noted above, since the opinion of a non-examining psychologist constitutes substantial evidence only if it is consistent with other evidence in the record, and because the ALJ both failed to state what other evidence in the record was consistent therewith and erred in evaluating much of the other medical opinion source evidence concerning plaintiff's mental limitations, it is unclear whether the ALJ properly relied on the mental functional assessment Dr. Gregg and Dr. Eather provided. As such, the ALJ erred here as well.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Here, the ALJ discounted plaintiff's credibility because the treatment he received for his back pain was conservative in nature, and because none of his treatment providers "imposed any limitations . . . as a result of" that pain. AR 21. These are both valid bases upon which the ALJ could find plaintiff to be not fully credible, particularly given that plaintiff has alleged disability in part on the basis of problems with his back. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are "inconsistent with clinical observations" can satisfy clear and convincing requirement); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting of claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request, serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

REPORT AND RECOMMENDATION - 13

Plaintiff argues the record fails to establish he could have participated more actively in treatment or was intentionally inconsistent in seeking or obtaining the same, given the time he spent incarcerated and was jailed due to probation violations. But there is no indication – or at least the substantial weight of the evidence in the record fails to support one – both in terms of his back pain, and as discussed in greater detail below his mental health issues, that plaintiff made any efforts to seek more aggressive treatment for his supposedly disabling back pain, or was prevented from doing so by the fact of his multiple incarcerations or any other valid reason. As such, the ALJ did not err here.

The ALJ also discounted plaintiff's credibility in part due to his "poor work history." AR 21. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found claimant's extremely poor work history and lack of propensity to work in her lifetime negatively affected her credibility regarding her inability to work); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment). Plaintiff argues this finding ignores the long-standing nature of his impairments. But plaintiff's own testimony at the hearing shows he left his past jobs for reasons other than his impairments. See AR 37-46. Accordingly, this too was a proper basis for discounting his credibility.

As indicated above, the ALJ discounted plaintiff's credibility as well due to evidence of "inconsistency with mental health treatment." AR 21. The ALJ further found his credibility was diminished because he had "not reasonably complied with medical treatment." Id. Failure to follow a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff argues the ALJ did not cite any specific evidence in support of the latter finding regarding failure to reasonably comply

REPORT AND RECOMMENDATION - 14

with medical treatment. But there is substantial evidence of such failure in the record. In early March 2004, for example, plaintiff was "a 'no show' for two scheduled appointments" for "an intellectual assessment" with the "facility psychiatrist" at the prison where he was incarcerated, though his "medical compliance" was otherwise noted to be good at the time. AR 278-79.

In mid-February 2007, plaintiff reported not having "seen a medical profession [sic] in 'years'," even though he did "have a medical provider" and apparent medical coupon. AR 600; see also AR 566 (noting same in mid-July 2007). In early July 2007, he was found to have a "history of noncompliance with appointments." AR 435. In late June 2008, it was noted that he had not been seen in the "med department" since February of that year. AR 419. Finally, in early March 2009, plaintiff's mental health counselor noted that he had missed his appointments "on a regular basis" and that he was "not engaging regularly in his treatment." AR 442.

The substantial evidence in the record, therefore, supports the ALJ's finding here. Thus, while there may be some indication in the record – although even this is not entirely clear – that there may have been times in-between when he was incarcerated that he had trouble obtaining all of his medications right away (see AR 243, 250, 299), there is other evidence that he did not have to wait too long before getting access to them when that occurred (see AR 306, 310). The weight of the medical evidence, therefore, also supports the ALJ's determination that plaintiff was not entirely consistent in seeking or obtaining mental health treatment, both in terms of mental health counseling and the medications he was taking.

Plaintiff takes issue with the ALJ's additional statement that one of his counselors noted "his strength was that he was 'able to work unskilled job.'" AR 23. He asserts that his work history and testimony show this to be an overstatement of his abilities, and that the above self-report is belied by the opinions of Dr. Parker, Dr. Joseph and Mr. Sanchez. As discussed above,

REPORT AND RECOMMENDATION - 15

however, plaintiff's testimony shows he left his past jobs for reasons other than his impairments. Also as discussed above, the ALJ did not err in rejecting the opinion of Mr. Sanchez. Therefore, even though plaintiff's self-report here may be inconsistent with the opinions of Dr. Parker and Dr. Joseph, the ALJ overall was not remiss in relying on plaintiff's self-report as an indication that plaintiff himself believed he was capable of performing at least some types of work, which clearly would call into question his allegation of total disability.[1]

IV. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the

---

[1] To the extent the ALJ further discounted plaintiff's credibility on the basis of plaintiff's activities of daily living, the undersigned agrees, for the reasons discussed above, that she erred in doing so. Namely, it is far from clear the extent to which plaintiff engaged in those activities, such that the record shows he was able to perform them for a substantial part of the day or that they necessarily were transferrable to a work setting or called into question his other testimony. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). Nevertheless, the fact that one of the reasons the ALJ offered for discounting plaintiff's credibility may have been improper, this does not render the ALJ's credibility determination overall invalid, as long as it is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148.

REPORT AND RECOMMENDATION - 16

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity to perform "**a full range of work at all exertional levels**," except that he was "**limited to performing simple repetitive tasks with minimal interaction with the public**." AR 19 (emphasis in original). The undersigned agrees with plaintiff that it is not at all clear the ALJ's RFC assessment accurately describes all of his mental functional limitations, given the errors the ALJ made in evaluating the medical opinion source evidence in the record discussed above. On the other hand, because also as discussed above, the ALJ did not err overall in discounting plaintiff's credibility, she also did not err in assessing plaintiff's RFC on this basis.

V.   The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing his past relevant work as a house painter, dishwasher and janitor. See AR 24. Again the undersigned agrees with plaintiff that the ALJ erred in so finding here in light of his errors in evaluating the medical opinion evidence in the record and in assessing his residual functional capacity discussed above, but not due to any errors in her assessment of plaintiff's credibility. Thus, while plaintiff has the burden at step four of the disability evaluation process to show he is unable to return to his past relevant work (see Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), that burden has been met here, at least to the extent that it is not clear plaintiff is able to return to such work.

VI.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the

REPORT AND RECOMMENDATION - 17

proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record concerning plaintiff's mental functional limitations, his residual functional capacity and his ability to perform his past relevant work, it is appropriate to remand this matter to defendant for the purpose of conducting further administrative proceedings. If it is determined on remand that plaintiff cannot perform her past relevant work, then defendant shall proceed on to step five of the sequential disability evaluation process to determine if he is capable of performing other jobs existing in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled. The undersigned therefore recommends as

REPORT AND RECOMMENDATION - 18

well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 6, 2012**, as noted in the caption.

DATED this 16th day of December, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19